# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SAHAR JALLAD, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | No. 16-4795 |
| PROGRESSIVE ADVANCED INSURANCE COMPANY, | : | |
| Defendant. | : | |

## MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                             **DECEMBER 11, 2017**

Plaintiff Sahar Jallad ("Jallad") filed suit against Felix Madera ("Madera") and Defendant Progressive Advanced Insurance Company ("Progressive") in the Court of Common Pleas of Philadelphia County, alleging a claim of negligence against Madera as a result of a motor vehicle accident, and claims of breach of contract and bad faith against Progressive for issues related to underinsured motorist ("UIM") benefits. Progressive invoked this Court's federal diversity jurisdiction and removed the case on September 7, 2016. Although there was complete diversity between the parties (Jallad was a citizen of Massachusetts; Progressive was a citizen of Ohio; and Madera was a citizen of Pennsylvania), Jallad filed a Motion to Remand, contending that removal was improper because of the "forum defendant rule." *See* 28 U.S.C. § 1441(b)(2). On November 8, 2016, this Court issued an Order denying Jallad's Motion to Remand and dismissing Madera from the suit on the basis of fraudulent joinder. (*See* Doc. No. 14.) Accordingly, the only causes of action that remain are against Progressive for breach of contract (Count II) and statutory bad faith (Count III).

Presently before the Court is Progressive's Motion for Partial Summary Judgment, which seeks dismissal of the statutory bad faith claim. Jallad has filed a Brief in Opposition, and Progressive has filed a Reply Brief in Support. For the reasons noted below, we will grant Progressive's Motion for Partial Summary Judgment and dismiss the bad faith count.

## I. BACKGROUND

### A. Factual History

Jallad and Madera, both insured through Progressive, were involved in a motor vehicle accident on September 24, 2014. (Pl.'s Br. in Opp'n Def.'s Mot. Partial Summ. J. at 2, 4.) Jallad was taken by a friend from the scene of the accident to the emergency room at Albert Einstein Medical Center. (*Id.* at 2.) She then underwent a course of treatment with Andrew M. Lipton, D.O. ("Lipton"), approximately two to three times per week from October 14, 2014, until she moved out of the Philadelphia area in May 2015. (*Id.* at 3.) After moving out of the area and back to Boston, she received treatment from a chiropractor, Brian J. Pace, D.C. ("Pace"), approximately two to three times per week from June 15, 2015 to October 19, 2015. (*Id.* at 4.) Jallad received treatment from another chiropractor, Scott A. Darragh, D.C., between May 3, 2016 and January 9, 2017. (*Id.*)

Jallad was insured through a Progressive automobile policy that provided first party medical benefits with a limit of $50,000; income loss protection with a limit of $5,000; and UIM coverage with a limit of $100,000. (*Id.* at 5 (citing Ex. V).) Madera, also insured through a Progressive automobile policy, had third party liability limits of $15,000. (*Id.* (citing Ex. U).) Shortly after the accident, Progressive opened a first party claim (the "first party claim") for Jallad and a third party claim (the "third party claim") for Jallad against Madera.

On October 9, 2014, Progressive first documented Jallad's intent to make an income loss claim under the first party claim. (*Id.* at 6 (citing Ex. AA).) Jallad then forwarded to Progressive wage and salary verification information from her part-time employer, My Alarm Center. (*Id.* at 7 (citing Ex. BB).) Jallad also worked a full-time job as a manager for a T-Mobile retail store, (*see id.* at 3), although she apparently never sent Progressive wage loss information related to that employer. Her $5,000 income loss limit exhausted on June 11, 2015. (*Id.* (citing Ex. EE).)

On May 6, 2015, Progressive sent a letter to Lipton that stated, in part, "All necessary documentation has been submitted to a Peer Review Organization ["PRO"] in accordance with Section 1797[(b)](1) of the Pennsylvania Motor Vehicle Financial Responsibility Law. . . . Pursuant to [Section] 1797[(b)](3) of the Pennsylvania Motor Vehicle Financial Responsibility Law, paying of any billing is pending determination by the PRO." (*Id.* (citing Ex. GG).) Progressive sent an identical letter to Pace on July 31, 2015. (*Id.* at 7-8 (citing Ex. HH).)

On October 2, 2015, Jallad's counsel requested that Progressive open a UIM claim under the existing first party claim. (*Id.* at 8.) Progressive assigned Jallad's UIM claim to Margaret Mary Burke ("Burke"). (*Id.*) On October 29, 2015, Progressive denied Jallad's third party bodily injury claim against Madera, concluding their investigation revealed that Jallad's policy provided limited tort insurance.[1] (*Id.* at 9.) Progressive's claim log notes reveal that only $4,600 in first party medical benefits of the possible $50,000 in coverage had been paid as of October 16, 2015. (*See id.*, Ex. G ("Claim Log Notes") at Jallad 218.)

---

[1] Under Pennsylvania law, full tort refers to the unrestricted right of a plaintiff to recover noneconomic damages as a result of injuries sustained in a motor vehicle accident. *See* 75 Pa. Cons. Stat. § 1705(c). Limited tort, on the other hand, restricts the right of a plaintiff to recover noneconomic damages unless the injury is "serious," or where the person at fault: (i) "is convicted or accepts Accelerated Rehabilitative Disposition (ARD) for driving under the influence of alcohol or a controlled substance in that accident"; (ii) "is operating a motor vehicle registered in another state"; (iii) "intends to injure himself or another person"; and (iv) "has not maintained financial responsibility as required by this chapter." *Id.* § 1705(d).

3

On October 19, 2015, Burke sent a letter to Jallad's counsel requesting, *inter alia*, "[a]ny information that you would like for me to consider in evaluation of your [client's] claim for bodily injury including any medical and/or wage information." (Def.'s Concise Statement of Facts, Ex. C at 3.) On November 24, 2015, Burke sent a similar letter to Jallad's counsel, stating that she had not received the documentation and would need it "to properly evaluate your client's claims of injury." (*Id.* at 1.) Jallad's counsel responded on December 11, 2015 and enclosed all evidence that he currently had on file. (*Id.* at 9.)

On December 18, 2015, Burke evaluated the records Jallad's counsel sent and noted that only $5,400 in first party medical benefits had been paid out of the possible $50,000 in coverage. (Claim Log Notes at Jallad 222.) Burke further wrote that Jallad had two employers, T-Mobile and My Alarm Center, but Progressive did not have verification of lost wages and the period of disability from T-Mobile. (*Id.* at Jallad 223.) That same day, she sent Jallad's counsel a letter requesting a T-Mobile verification of the period of disability and wages, the employment file, and the job description; the My Alarm Center employment file and job description; and Jallad's current employment status and records. (*Id.*) Burke sent identical letters on January 15, 2016, February 18, 2016, March 28, 2016, and April 27, 2016, and apparently never received a response from Jallad's counsel to any of those correspondences. (*Id.* at Jallad 224, 225; *see also* Def.'s Concise Statement of Facts, Ex. C at 5-8.)

On May 3, 2016, Burke and Jallad's counsel exchanged voicemails regarding Jallad's employment records. (Claim Log Notes at 225.) Jallad filed a state court lawsuit against Progressive the very next day for breach of contract (and an implied bad faith claim) for failing to make any offer to resolve her UIM claim. (Pl.'s Br. in Opp'n Def.'s Mot. Partial Summ. J. at 10.) On June 23, 2016, Progressive made a $3,000 offer to resolve Jallad's claims. (*Id.*)

4

### B. Procedural History

On November 18, 2015, Jallad commenced suit against Madera in the Court of Common Pleas of Philadelphia County that asserted a negligence cause of action. (*Id.* at 9.) On May 4, 2016, Jallad filed a separate lawsuit against Progressive in the Court of Common Pleas of Philadelphia County that asserted breach of contract and bad faith claims related to her claim of UIM benefits. (*Id.* at 10.) Progressive removed the May 4, 2016 lawsuit to this Court on the basis of diversity jurisdiction, which was docketed at Civil Action No. 16-2384. Jallad subsequently filed a Motion for Joinder and Remand, seeking remand to state court in the event the Court joined Madera to the case. On July 13, 2016, this Court denied Jallad's Motion. Jallad then voluntarily dismissed the May 4, 2016 federal action against Progressive and the pending state court action against Madera.

On August 8, 2016, Jallad commenced suit against both Madera and Progressive in the Court of Common Pleas of Philadelphia County for virtually the same causes of action as asserted in the original separate suits. (*See* Compl.) Progressive removed the matter to this Court, which was docketed at Civil Action No. 16-4795. Jallad filed a Motion to Remand, contending that removal was improper under the "forum defendant rule" pursuant to 28 U.S.C. § 1441(b)(2). On November 8, 2016, this Court issued an Order denying Jallad's Motion to Remand and dismissing Madera from the suit on the basis of fraudulent joinder.[2] (*See* Doc. No. 14.) Thus, the only causes of action that remain in this case are breach of contract (Count II) and bad faith (Count III) against Progressive.

---

[2] Jallad appealed the Court's Order (Doc. No. 14) denying her Motion for Joinder and Remand to the United States Court of Appeals for the Third Circuit ("Third Circuit"). (*See* Doc. No. 20.) On April 10, 2017, the Third Circuit issued an Order dismissing Jallad's appeal due to lack of appellate jurisdiction. (*See* Doc. No. 25.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) states that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court asks "whether the evidence presents a sufficient disagreement to require submission to the jury or whether . . . one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The moving party has the initial burden of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "A fact is material if it could affect the outcome of the suit after applying the substantive law. Further, a dispute over a material fact must be 'genuine,' i.e., the evidence must be such 'that a reasonable jury could return a verdict in favor of the non-moving party.'" *Compton v. Nat'l League of Prof'l Baseball Clubs*, 995 F. Supp. 554, 561 n.14 (E.D. Pa. 1998) (quoting *Liberty Lobby*, 477 U.S. at 255).

Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Once the moving party has produced evidence in support of summary judgment, the non-moving party must go beyond the allegations set forth in its pleadings and counter with evidence that presents "specific facts showing that there is a genuine issue for trial." *See Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1362-63 (3d Cir. 1992). "More than a mere scintilla of evidence in its favor" must be presented by the non-moving party in order to overcome a summary judgment motion. *Tziatzios v. United States*, 164 F.R.D. 410, 411-12 (E.D. Pa. 1996). If the court

determines that there are no genuine disputes of material fact, then summary judgment will be granted. *Celotex*, 477 U.S. at 322.

## III.    DISCUSSION[3]

"Pennsylvania's bad faith statute allows a plaintiff to recover interest, punitive damages, court costs, and/or attorney's fees if an insurer has acted in bad faith in handling a claim." *Padilla v. State Farm Mut. Auto. Ins. Co.*, 31 F. Supp. 3d 671, 674 (E.D. Pa. 2014) (citing 42 Pa. Cons. Stat. § 8371). The bad faith statute also extends to an insurer's handing of UIM claims. *Id.* (citing *Brown v. Progressive Ins. Co.*, 860 A.2d 493, 500 (Pa. Super. Ct. 2004)). In *Terletsky v. Prudential Prop. & Cas. Ins. Co.*, the Superior Court of Pennsylvania established the standard for bad faith claims under § 8371. 649 A.2d 680, 688 (Pa. Super. Ct. 1994); *see also Klinger v. State Farm Mut. Auto. Ins. Co.*, 115 F.3d 230, 233 (3d Cir. 1997). To prove bad faith, the insured must prove two elements by clear and convincing evidence: "(1): that the insurer lacked a reasonable basis for denying benefits; and (2) that the insurer knew or recklessly disregarded its lack of reasonable basis." *Klinger*, 115 F.3d at 233. "At the summary judgment stage, the insured's burden in opposing a summary judgment motion brought by the insurer is 'commensurately high because the court must view the evidence presented in light of the substantive evidentiary burden at trial.'" *Nw. Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 137 (3d Cir. 2005) (quoting *Kosierowski v. Allstate Ins. Co.*, 51 F. Supp. 2d 583, 588 (E.D. Pa. 1999)).

"In deciding whether an insurer had a reasonable basis for denying benefits, a court should examine what factors the insurer considered in evaluating a claim." *Padilla*, 31 F. Supp. 3d at 675 (citing *Terletsky*, 649 A.2d at 688-89). "Under the second part of the analysis, mere

---

[3] "A federal court sitting in diversity must apply state substantive law." *Chamberlain v. Giampapa*, 210 F.3d 154, 158 (3d Cir. 2000) (citation omitted). We will apply Pennsylvania law, as Jallad's claim of bad faith is directly under 42 Pa. Cons. Stat. § 8371.

7

negligence or bad judgment does not constitute bad faith." *Id.* (citing *Condio v. Erie Ins. Exch.*, 899 A.2d 1136, 1143 (Pa. Super. Ct. 2006)).

Progressive argues that dismissal of the bad faith count is warranted because a genuine dispute over the value of Jallad's UIM claim does not rise to the level of bad faith. (*See generally* Def.'s Br. in Support Mot. Partial Summ. J.) Jallad concedes Progressive's argument that a genuine dispute over the value of a UIM claim is a reasonable basis to defeat bad faith. (Pl.'s Br. in Opp'n Def.'s Mot. Partial Summ. J. at 11.) Instead, Jallad opposes summary judgment on the basis that the means and methods Progressive used to value Jallad's UIM claim was done in bad faith. (*Id.* at 14.) Jallad puts forth four arguments concerning how Progressive's handling of her UIM claim was done in bad faith: (1) Progressive was not entitled to assert a $15,000 credit against its own policy; (2) Progressive has not met its burden to prove she is bound by limited tort; (3) Progressive's efforts to stop her medical treatment and at the same time rely on a lack of ongoing medical treatment; and (4) Progressive's failure to review its own file is not a basis to claim it did not have documented evidence of wage loss.[4] (*Id.* at 15-20.)

### A. Whether Progressive Can Assert a Credit

Jallad first opposes summary judgment on the basis that Progressive cannot assert a $15,000 credit after it refused to pay $15,000 in liability insurance from Madera's policy. (*See id.* at 15-16.)

"Under Pennsylvania law, an insured can only recover UIM benefits from his insurer in excess of the amount of coverage available from tortfeasors." *Irving v. Progressive Speciality*

---

[4] Jallad also puts forth a fifth argument that "Progressive's disregard for [her] actual medical expenses, coupled with its active attempt to minimize medical expenses is not a proper basis to undervalue [her] claims." (Pl.'s Br. Opp'n Def.'s Mot. Partial Summ. J. at 20.) However, this argument is identical to her third argument, and we need not address it separately.

*Ins. Co.*, No. 11-7594, 2012 WL 2912309, at *1 (E.D. Pa. July 17, 2012). Insureds can pursue UIM coverage when a tort suit is pending against the tortfeasor, so long as a credit is given to the insured's insurance company in the full amount of the tortfeasor's liability coverage. *See id.* at *2 (citing *Krakower v. Nationwide Mut. Ins. Co.*, 790 A.2d 1039, 1041 (Pa. Super. Ct. 2001); *Harper v. Providence Washington Ins. Co.*, 753 A.2d 282, 284 (Pa. Super. Ct. 2000)). Further, "Pennsylvania courts have also held that UIM awards are properly reduced by the full amount of [the] tortfeasor's policy limits even when plaintiffs have settled for less than that amount." *Id.* (citing *D'Adamo v. Erie Ins. Exch.*, 4 A.3d 1090, 1098-99 (Pa. Super. Ct. 2010)).

Jallad originally filed two separate state court actions against Madera and Progressive. When Progressive removed its suit to federal court, Jallad attempted to join Madera to the action in an effort to have the case remanded to state court. This Court denied Jallad's Motion for Joinder and Remand. Jallad then voluntarily discontinued the federal and state court actions, instead choosing what she apparently thought was a clever means to accomplish the same goal: file a state court action against both Madera and Progressive, which would seemingly make diversity jurisdiction improper under the "forum defendant rule." *See* 28 U.S.C. § 1441(b)(2). Progressive removed the case anyway, arguing that Madera was not a proper party to the lawsuit on the basis of fraudulent joinder. This Court agreed and subsequently issued an Order dismissing Madera from the suit on November 8, 2016.[5]

In short, Jallad cites no case law for the proposition that Progressive is not entitled to a $15,000 credit for Madera's liability coverage. Indeed, Progressive would be entitled to the credit even if a suit against Madera were pending or if Jallad settled her claim for less than Madera's liability limits. Jallad's failure to maintain a proper lawsuit against Madera is no fault

---

[5] Notably, the Court's Order dismissing Madera from the action was more than two years after the September 24, 2014 motor vehicle accident. Pennsylvania has a two-year statute of limitations on claims of negligence. *See* 42 Pa. Cons. Stat. § 5524.

9

of Progressive's, and her run-around of the federal removal statute does not preclude Progressive from asserting a $15,000 credit.

### B.     Whether Jallad's Policy Provides Limited Tort Insurance

Jallad next argues that "Progressive has not produced any evidence to [meet] its burden to establish [she] waived her right to recover non-economic damages. Progressive's assertion to the contrary is without [a] reasonable basis and in bad faith." (Pl.'s Br. Opp'n Def.'s Mot. Partial Summ. J. at 17-18.) Once again, this argument is without merit.

Pennsylvania law provides that an insurer "shall notify in writing each named insured of the availability of two alternatives of full tort insurance and limited tort insurance." 75 Pa. Cons. Stat. § 1705. An individual who waives full tort insurance and instead elects limited tort cannot recover non-economic damages unless one of the exceptions in § 1705(d) applies. *See id.* § 1705(d). Moreover, a signed waiver form presumes a knowing and intelligent waiver. *See id.* § 1705(a)(2).

Jallad claims that Progressive has not produced a signed waiver form to establish that she waived her full tort rights because "Progressive produced a waiver with Ms. Jallad's name typed on it." (Pl.'s Br. Opp'n Def.'s Mot. Partial Summ. J. at 17.) Jallad provides no citation to any case law or statute that prohibits insurance companies from obtaining electronic signatures for tort waiver forms. Further, Progressive responds that electronic signatures are permissible under both federal and Pennsylvania state law. *See* 15 U.S.C. § 7001; 73 Pa. Cons. Stat. § 2260.305. Accordingly, Jallad's argument is without merit.[6]

---

[6] In her Complaint, Jallad attached her Progressive Policy Declarations, which states that "[t]his policy provides limited tort insurance." (*See* Compl., Ex. A at 2.)

### C. Progressive's Alleged Efforts to Stop Jallad's Medical Treatment

Jallad's third argument is that Progressive acted in bad faith by relying on her lack of ongoing medical treatment when it allegedly actively sought to limit her treatment by misuse of the peer review process. (Pl.'s Br. Opp'n Def.'s Mot. Partial Summ. J. at 19-20.) As indicated above, Progressive sent letters to Lipton and Pace that stated, "[a]ll necessary documentation has been submitted to a [PRO] in accordance with Section 1797[(b)](1) of the Pennsylvania Motor Vehicle Financial Responsibility Law. . . . Pursuant to [Section] 1797[(b)](3) of the Pennsylvania Motor Vehicle Financial Responsibility Law, paying of any billing is pending determination by the PRO." (Pl.'s Br. Opp'n Def.'s Mot. Partial Summ. J., Ex. GG.)

Pennsylvania law provides that "[i]nsurers shall contract jointly or separately with any peer review organization established for the purpose of evaluating treatment, health care services, products or accommodations provided to any injured person" and "[s]uch evaluation shall be for the purpose of confirming that such treatment, products, services or accommodations conform to the professional standards of performance and are medically necessary." 75 Pa. Cons. Stat. § 1797(b)(1). Under the circumstances presented here, we fail to see how sending medical documentation to a PRO to determine whether medical treatment conforms to the professional standards of performance or is medically necessary amounts to bad faith.

### D. Progressive's Alleged Failure to Review Its Own File

Jallad's final argument is that Progressive's failure to review its own file is not a basis to claim that it did not have documented evidence of wage loss. (Pl.'s Br. Opp'n Def.'s Mot. Partial Summ. J. at 20.) Jallad notes that Progressive documented notice of Jallad's income loss claim on October 9, 2014. (*Id.*) She claims Progressive was given requested wage loss verification information and made payments on her income loss claim until it was exhausted on

June 11, 2015. (*Id.* at 7, 20.) Thus, Jallad argues that Burke had all of the information necessary to calculate the income loss for purposes of the UIM claim because Burke had been given access to Jallad's income loss file. (*Id.* at 20.)

Progressive counters that the only wage loss information in its file related to Jallad's part-time job at My Alarm Center and was for the period of December 2014 through May 2015. (Def.'s Reply Br. at 5.) Progressive argues that to make an accurate evaluation of Jallad's UIM claim, Burke requested on numerous occasions wage information and verification of Jallad's disability from T-Mobile, as well as the employment file and job description. (*Id.*) Burke further requested Jallad's employment file from My Alarm Center and her current employment status and records. (*Id.*)

The information Burke requested was entirely reasonable in making an evaluation of Jallad's UIM claim, and it was information that clearly had not been provided to Progressive. Jallad makes no contention that she responded to Progressive's numerous requests for those documents. Accordingly, her argument fails.

## IV. CONCLUSION

Based on our review of the record, Progressive acted reasonably in the handling of Jallad's UIM claim. For the reasons discussed above, we grant Progressive's Motion for Partial Summary Judgment and dismiss Jallad's statutory bad faith claim.

An appropriate Order follows.